UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSE MORA,

Plaintiff,

v.

Case No. 22-cv-890-pp

ALEX L. WICKETTS
and AUSTIN HANCOCK,

Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION TO REOPEN CASE (DKT. NO. 71)**

---

On August 4, 2022, the plaintiff filed a complaint alleging that the defendants had violated his constitutional rights during and after a 2019 traffic stop. Dkt. No. 1. The case proceeded to a jury trial on December 16, 2025; the trial ended in a mistrial after the plaintiff took the stand and testified contrary to facts to which he had stipulated. The defendants then filed a motion for sanctions, seeking dismissal and fees and costs. Dkt. No. 54.

On April 14, 2026, the attorney who'd been representing the plaintiff filed a motion to withdraw and advised the court that he believed the plaintiff's potential successor counsel would appear at the status conference scheduled for later that day. Dkt. No. 58 at 1. Defense counsel, the plaintiff's original counsel and the plaintiff himself appeared at the telephonic status conference, as did the plaintiff's prospective successor counsel, Attorney Lane Fitzgerald. Dkt. No. 60. Attorney Fitzgerald advised the court that once the "paperwork" was complete, he or someone from his firm would be representing the plaintiff.

Id. The court allowed the plaintiff's counsel to withdraw and calendared a follow-up status conference for May 12, 2026, with the expectation that the retainer agreement would be completed by then. Id. at 1-2.

But at the May 12, 2026 status conference, Attorney Pete Anderson from the Fitzgerald firm appeared and stated that the plaintiff had not completed the retainer agreement and had not responded to the firm's calls or emails since April 24, 2026. Dkt. No. 63 at 1. The plaintiff did not appear at this status conference, even though he knew it had been scheduled based on his attendance at the prior status conference.

Because of the plaintiff's failure to appear or retain counsel, the court issued an order requiring the plaintiff to show cause for his failure to prosecute his case. Dkt. No. 64. In that May 13, 2026 order, the court recounted that it had not heard from the plaintiff since he attended the April 14, 2026 telephone hearing a month earlier. Id. at 3. The court advised the plaintiff that if he wanted to continue with his case, he must either retain a lawyer or tell the court that he planned to represent himself, so that the case could move forward. Id. The court stated that it would "give the plaintiff an opportunity to appear at a telephone hearing and explain why he ha[d] not yet retained a lawyer, why he did not appear at the May 12, 2026 hearing, whether he wishe[d] to continue with this case and, if so, how he plan[ned] to do so." Id. The court warned the plaintiff that if he failed to appear, the court might dismiss the case, either by granting the defendants' motion for sanctions without the plaintiff's input or by imposing the court's own sanctions under

Federal Rule of Civil Procedure 41(b) for failure to prosecute, and impose monetary sanctions. Id. at 3-4. The court scheduled the show cause hearing for June 16, 2026. Id. at 4.

The court mailed the order to show cause to two addresses defense counsel had for the plaintiff (obtained through discovery) as well as to the plaintiff's email address provided by his prior counsel. The orders were not returned as undeliverable, so the court had no reason to believe that the plaintiff did not receive them.

But the plaintiff did not appear at the June 16, 2026 hearing. See Dkt. No. 65 (audio recording), 66 (court minutes). He did not contact the court or file anything explaining why he could not appear. Id. Nor did the Fitzgerald firm (or any other firm purporting to represent the plaintiff) appear at this hearing. Id. The court determined that because the plaintiff had failed to appear at two hearings, had failed to retain successor counsel and had failed to inform the court of his plans for continuing the litigation, the plaintiff must no longer wish to pursue the case. Id. The court stated that it would issue a separate order granting the defendant's motion for sanctions and dismissing the case as a sanction and for failure to prosecute. Id.

A district court has the inherent power to dismiss a case for a plaintiff's behavior during litigation, Secrease v. W. & S. Life Ins. Co., 800 F.3d 397, 401 (7th Cir. 2015), or for a plaintiff's failure to prosecute, Ball v. City of Chicago, 2 F.3d 752, 759-60 (7th Cir. 1993). Further, both the Federal Rules of Civil Procedure and this court's Local Rules permit dismissal if the plaintiff is not

diligently prosecuting his case. Fed. R. Civ. P. 41(b) (defendant may move to dismiss a case "[i]f the plaintiff fails to prosecute or to comply with . . . a court order"); Civil L.R. 41(c) (E.D. Wis.) (court may dismiss a case with or without prejudice "[w]henever it appears to the Court that the plaintiff is not diligently prosecuting the action"). "There is no 'grace period' before dismissal for failure to prosecute is permissible and no requirement of graduated sanctions, but there must be an explicit warning before the case is dismissed." Ball, 2 F.3d 760.

The court concluded that because the plaintiff twice had failed to appear and had not responded to court orders (even when the court had explicitly warned that his case could be dismissed if he failed to respond), dismissal was appropriate. Dkt. No. 67 at 4. The court advised the defendants that they could file a bill of costs no later than fourteen days after the court entered judgment, and gave the plaintiff fourteen days from service of the bill of costs to object. Id. The court issued its dismissal order on June 17, 2026, dkt. no. 67, and again mailed it to the two addresses it had for the plaintiff (one of which was on 11th Avenue in Kenosha) and emailed it to him. The court entered judgment the same day. Dkt. No. 68.

The defendants filed their bill of costs on June 18, 2026, dkt. no. 69, and a few days later filed a briefing letter, dkt. no. 17. On June 22, 2026, the clerk's office mailed the plaintiff (at the 11th Avenue address in Kenosha) a briefing letter advising him that his objections to the bill of costs were due July 2, 2026; the defendants' response was due by July 9, 2026 and the plaintiff's

reply by July 16, 2026. Dkt. No. 70. The briefing schedule sent to the 11th Street address was not returned to the court as undeliverable.

On July 26, 2026—just over a week after the court issued its order of dismissal—the court received from the plaintiff a letter. Dkt. No. 71. The letter stated:

> I Jose Mora would first like to apologize on my behalf for formally missing my last court hearing. As you know I was hospitalized December 11th-14th of 2025 for a lower spinal surgery. I had my settlement trial on the 15th and 16th of December 2025 in which during the proceedings my stomach stitches had opened and I had to be rushed to the hospital in Milwaukee from your court room. After the miss trial my attorney Mr. William Sulton informed me he no longer wants to represent me in court and that he will be filing a motion to withdraw from my case sometime in February without explaining why. We had that hearing in which I attended including Mr. Sulton and my suppose to be new attorney Mr. Lane Fitzgerald. On that hearing date Mr. Sulton withdrew and Mr. Fitzgerald claimed he will be representing me for the following court hearings. Unfortunately Mr. Sulton has not sent any documentation to me to sign to let me go and also Mr. Fitzgerald has not spoken to me since that hearing date or has sent me any documents to sign regarding him to represent me. Mr. Fitzgerald has not made any time to contact me and I call his office two times a week and never hear from him. This has been a very difficult last six months for me due to the fact that I am a single father of two and I am recovering from spinal surgery. I have all medical documentation showing the last six months have been recovery and physical therapy. I also do not have a vehicle and did not have a phone for one month. It has also been very difficult to find legal representation after Mr. Sulton withdrew from my case. I have called and spoke to over one hundred and fifty law firms throughout the state of Wisconsin and Illinois and not one attorney would like to take on my case. "I don't understand why no one wants to help when it was proven in court in 2020 that the officers lied, intimidated me and caused bodily harm and I was acquitted of all charges they falsely accused me of". I've contacted so many law firms, spoken to so many attorneys and even given permission to multiple firms to review my case and yet I'm told there is no one that is willing to help me. I also have the proof for that to show how many law firms I've contacted. Today I am requesting and also asking with your permission to please reopen my case and allow me time to obtain the right legal

> representation to help me in this case. It is not fair on my behalf that no one cares enough to help when I have done nothing wrong. Can you find it in your heart to please help and give me time so that I can have a fair trial hearing. Thank you for your time Ms. Pepper.

Id.

The envelope in which the plaintiff sent this letter bore the return address on 11th Street in Kenosha, one of the two addresses where the court had been sending orders. Dkt. No. 71-1. The court construed the letter as a motion to reopen, and issued an order giving the defendants a deadline of July 24, 2026 by which to respond and allowing the plaintiff to reply (if he chose to do so) within fourteen days after the defendants filed their response. Dkt. No. 72. The court mailed that order to the plaintiff at the 11th Avenue address in Kenosha and emailed it to him. On July 22, 2026, the court received the defendants' brief in opposition to the motion to reopen. Dkt. No. 74. The court has heard nothing from the plaintiff since June 26, 2026, and no attorney has filed a notice of appearance on his behalf.

The court will not reopen the case. It has several concerns with the content of the plaintiff's letter asking it to do so. Although the plaintiff began his letter by apologizing for missing his last court "hearing" (singular), he actually had missed *two* court hearings (plural). And despite apologizing, the plaintiff did not explain why he had failed to appear at those two court hearings. He is correct that the court was aware that he had had surgery before his December 2025 trial. During the December 2025 trial, Attorney Sulton (who represented the plaintiff) made references to the plaintiff needing to shift positions or take breaks due to a recent surgery. But that surgery took

place months before the May and June 2026 hearings that the plaintiff failed to attend. The court could infer that during the period when the plaintiff missed these hearings, he had medical and physical therapy appointments, but the plaintiff did not say that. Despite saying that he had medical records to verify his appointments, the plaintiff did not attach any such documents to his letter. And presumably if he had had medical appointments on May 12 and June 16, 2026—the dates on which he missed hearings—he knew about those appointments beforehand. He could have called or written the court and advised the court that he could not attend those hearings. He could have contacted the court afterward and provided proof that he had been at a medical appointment at the time of the hearing.

The court understands that the plaintiff's letter says that he does not have a car. But the hearings the plaintiff missed were *telephone* hearings, not in-person hearings. He did not need a car to attend those hearings. All he needed was a telephone. The plaintiff's letter says that he did not have a phone for a month, but he does not reveal during which month he did not have a phone, and he does not say that he did not have a phone at the time of the May 12 and June 16 hearings. If the reason he did not attend the hearings is because he did not have a phone, he does not explain why he could not have borrowed someone else's phone.

The plaintiff's letter makes it sound as if his federal civil jury trial—which he calls a "settlement trial"—had to be cut short because he had to be rushed to the hospital due to broken stitches from his surgery. It is true that on the

second day of trial—December 16, 2025—Attorney Sulton asked the court to excuse the plaintiff because he was in severe pain, and the court allowed the plaintiff to leave the courtroom (before the jury was brought in) in a wheelchair. Dkt. No. 51 at 1. But that is not why the court had to declare a mistrial. The reason the court had to declare a mistrial was because the day before, while the plaintiff was on the stand during the first day of trial, he had *twice* given testimony that contradicted "the stipulation between the parties that the video footage [of the alleged excessive force incident] was authentic, original and accurate and that the videos had not been altered, edited or modified and that they were complete." Id. The defendants had made an oral motion for a mistrial based on the plaintiff's testimony, and the plaintiff had not opposed that motion. Id.

The plaintiff asserts that Attorney Sulton withdrew without ever explaining to the plaintiff why he was withdrawing. The court doubts that the plaintiff did not have an idea of why Attorney Sulton was withdrawing. He was in the courtroom when defense counsel moved for a mistrial based on the plaintiff's problematic testimony. Though he appeared to be in pain at the time, he was in the courtroom when the court explained that it was going to grant a mistrial due to the plaintiff's problematic testimony. If the plaintiff told Attorney Sulton that he wanted a new trial and that he'd testify the same way at a new trial, Attorney Sulton would have faced an ethical problem; his motion to withdraw advised the court that he was withdrawing for one of the reasons stated in Wisconsin Supreme Court Rule 20:16(b) (which includes allowing a

lawyer to withdraw when "the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement." SCR 20:16(b)(4)).

The plaintiff asserts that Attorney Lane Fitzgerald—the attorney who was supposed to succeed Attorney Sulton—did not give him paperwork to complete and did not respond to his many attempts to contact the plaintiff. That blatantly contradicts what Attorney Pete Anderson of the Fitzgerald Law Firm told the court at the May 12, 2026 hearing; Attorney Anderson told the court that he had made multiple attempts to reach the plaintiff through an e-mail address and through voicemails to his phone, but had not heard from the plaintiff since just after the April 24, 2026 hearing. Dkt. No. 63.

The court did not rule on the plaintiff's motion to reopen for some time, partly because of the press of other business but partly to give the plaintiff time to respond to the defendants' opposition brief and to try to find a lawyer to represent him. It has now been over two and a half months since the court received the plaintiff's letter and he has neither responded to the defendants' opposition brief nor had an attorney file a notice of appearance on his behalf. As the defendants argue, the plaintiff has not stated a basis under Fed. R. Civ. P. 60 for the court to reopen the case—he has not identified any mistake, inadvertence, surprise or excusable neglect; he has not identified any newly discovered evidence; he has identified no fraud or misrepresentation or misconduct by the opposing party (and the court dismissed the case because of the plaintiff's own misconduct); the judgment is not void and it has not been

satisfied. The only possible basis for relief would be the "catchall" clause in Rule 60(b)(6), which allows a court to grant relief from a final order or judgment for "any other reason that justifies relief." The plaintiff's identified reasons—that he has had medical appointments, that he is a single dad (an unquestionably hard job), that he doesn't have a car, that he didn't have a phone for a month and that he's had a hard time finding an attorney—are not sufficient reasons to reopen his case. The defendant *had* an experienced attorney in Mr. Sulton; if the plaintiff had not taken the stand and testified contrary to a stipulation (an agreement) between the parties, he might still have Mr. Sulton as his lawyer. It appears that he could have had Attorney Fitzgerald's office if he'd followed through with signing a retainer agreement (and likely coming up with a retainer, although the court does not know that). As for the plaintiff's difficulties in finding any other lawyer, any lawyer who opened the docket and read the minutes of the trial, as well as the transcript, would learn that the reason the court declared a mistrial was because of the plaintiff's conduct; that would not encourage most attorneys to want to be involved in the plaintiff's case.

For all these reasons, the court will deny the plaintiff's motion to reopen the case.

The court makes one observation: the defendants appear to have mailed their bill of costs to the defendant at an address on 45th Street in Kenosha. Dkt. No. 69-8. From the plaintiff's correspondence with the court, it appears that his address is 3811 11th Avenue, Kenosha, WI 53140. The court will give

the defendants the opportunity to mail their bill of costs to the plaintiff at the correct address, and to file a certificate of service showing that they did so. The court will set a briefing schedule below for the parties to address the bill of costs.

The court **DENIES** the plaintiff's motion to reopen his case. Dkt. No. 71.

The court **ORDERS** that within five days of this order, the defendants must mail their bill of costs and supporting documentation to the plaintiff at his address on 11th Street in Kenosha, and must file a certificate of service verifying that they have done so.

The court **ORDERS** that if the plaintiff does not agree with the bill of costs, he must file an objection with the court by the end of the day on **September 30, 2026**, explaining why he disagrees. If the plaintiff files an objection by September 30, 2026, the defendants may respond by **October 16, 2026**. If the defendants respond and the plaintiff wishes to file a reply, he may do so by the end of the day on **October 30, 2026**. If the plaintiff does not file an objection to the bill of costs, the court will review it without input from the plaintiff.

Dated in Milwaukee, Wisconsin this 15th day of September, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**